ELIZA CHOLLETTE, PLAINTIFF IN ERROR, V. OMAHA
   & REPUBLICAN VALLEY RAILROAD COMPANY, DE-
FENDANT IN ERROR.

[FILED APRIL 4, 1889.]

1. **Railroads:** TRANSFER OF CORPORATE POWERS: LIABILITY.   A railroad company organized and incorporated under the laws of this state cannot absolve itself from the performance of duties imposed upon it by law, nor relieve itself from liability for the wrongful acts or omissions of duty of persons operating its road, by transferring its corporate powers, or permitting others to operate its road as owners of its capital stock.   To allow it to do so would be contrary to the public policy of the state as expressed in its constitution and laws with reference to railroad companies.

2. ——: ——: ——.   The original obligation of a railroad company to the public cannot be discharged by a transfer of its fran-

chises to another company, except by legislative enactment consenting to and authorizing such transfer, with an exemption granted to such company relieving it from liability.    Mere legislative consent to the transfer is not sufficient: there must be a release from the obligations of the company to the public.

3. ——. INJURIES TO PERSON : DAMAGES.    Plaintiff applied to an agent in the ticket office at the station at W. on defendant's road, for a ticket to E., on the U. P. R. R., a number of miles east of the eastern terminus of defendant's road, which was on the line of the U. P. R. R., and by such agent was furnished a single local ticket from W. to E.  By direction of the agents in charg of the train, she took her seat in the car in which she was carried to the junction of the two roads and on to E. without change. At E., plaintiff was injured while alighting from the train, the injury being caused by the alleged negligence of those in charge of the train.  *Held*, That in such case the defendant would be liable under the provisions of section 3, article 1 chapter 72, Compiled Statutes, for the damages sustained.

ERROR to the district court for Saunders county.   Tried below before POST, J.

*Bell & Sornborger*, for plaintiff in error, cited : *Balsley v. St. L. A. & T. H. R. R. Co.*, 119 Ill. 68; see collection of cases, Am. and Eng. Encyc. of Law, Vol. 2, p. 756, title, "Carriers of Passengers," paragraph 25, sub-title, "Lessors and Lessees;" *G. W. Railway v. Blake*, 7 H. & N. 987; *Quimby v. Vanderbilt*, 17 N. Y. 306 ; *W. St. L. & P. Ry. v. Peyton*, 106 Ill. 534; *L. & N. R. R. v. Weaver*, 9 Lea, (Tenn.,) 38 ; *Carter v. Peck*, 4 Tenn. 203 ; Hutchinson on Carriers, secs. 158, 160, 170, 153 and notes 1 and 2; *Pearce v. R. R. Co*, 21 How. 441 ; *Champion v. Bostwick*, 18 Wend. 175 ; *Cobb v. Abbot*, 14 Pick. 289.

*J. M. Thurston, W. R. Kelly, J. S. Shropshire,* and *W. W. Cotton,* for defendant in error, cited : *Singleton v. R. R. Co.,* 70 Georgia, 464, cited by plaintiff, and the collection of cases found in paragraph 26, following the one referred to by plaintiff in Am. and Eng. Encyc. of Law, Vol. 2, page 756, title, "Carriers of Passengers;" *Hood v. N. Y.*

& N. Haven R. R. Co., 22 Conn. 1; Wood on R. R. Law, p. 1417; Milnor v. N. Y. & N. H. R. R. Co., 53 N. Y. 363.

REESE, CH. J.

This action was instituted in the district court of Saunders county by plaintiff against defendant, and was for damages alleged to have resulted from a personal injury received by plaintiff, while a passenger on defendant's road and in its cars, through the negligence of defendant's agents in starting the train before plaintiff could alight from the car at Elkhorn, by which she was thrown violently down and seriously injured.

It was alleged in the petition that defendant was a railroad corporation, duly organized and incorporated under the laws of the State of Nebraska, and was, on the date of the injury, the owner of and operating a line of railroad as a common carrier of passengers, running from and through the city of Wahoo, in Saunders county, to and through the village of Elkhorn, in Douglas county; that on the 31st day of December, 1886, in consideration of the payment by plaintiff to defendant of the required fare for such service, the defendant received her as a passenger on its road, to be transported from Wahoo to Elkhorn; that in consideration of the fare paid by plaintiff, defendant promised and undertook to transport her as aforesaid, and to furnish suitable means, and allow sufficient time for her to enter into and alight from its cars, but that by the negligence of defendant, in failing and refusing to allow her sufficient time to alight from its cars at Elkhorn, and by negligently starting the car on which she was then riding before she had a reasonable time to alight therefrom, she was thrown down and the injury received, to her damage, etc.

For answer, defendant admitted that it was a railroad corporation duly organized and incorporated under the laws

11

of this state, but denied that it was, at the date of the happening of the events described in plaintiff's petition, operating a line of road as a common carrier from Wahoo to Elkhorn; but alleged that it was the owner of a line of road from Valley, in the county of Douglas, to and through the city of Wahoo, in Saunders county, and that the village of Elkhorn was not in nor on any part of its line of road.

. For a second defense it was averred that defendant was a railroad corporation organized as aforesaid, but denied that it was operating the road from Wahoo to Elkhorn, said last-named point being situated many miles eastward from the terminus of defendant's road, and upon the Union Pacific railroad. It was further denied that defendant was operating its line of railroad, and it was alleged that defendant's line of road was operated exclusively by the Union Pacific Railway Company, a corporation organized under and by virtue of the laws of the United States, and that said Union Pacific Railway Company was operating defendant's line of railroad by reason and because of its ownership of all the capital stock of defendant, and that by reason of such ownership, the Union Pacific Railway Company, by its agents and servants, had the exclusive possession and control of all of the property of defendant, and was in exclusive possession and control of all the stations and trains operated upon and along the line of defendant's road, and that at the time mentioned in the petition, defendant had no agent nor servant in Saunders or Douglas county, and that if plaintiff purchased a ticket, as alleged in her petition, such purchase was made of and the ticket obtained from the Union Pacific Railway Company, and not from defendant nor any of its agents nor servants.

The third defense set up in the answer consisted of a denial of the reception of plaintiff by defendant as a passenger, the sale of a ticket to her, or receipt of fare, or that defendant was under any obligations to transport plaintiff. All carelessness or negligence on its part was also denied,

as well as all injury to plaintiff. It was also alleged that if any such injuries were received or sustained, they were received while plaintiff was a passenger upon the cars of the Union Pacific railway, and not upon those of defendant; and that any contract made for the purchase of a ticket from any person or agent at the time alleged, was made with and purchased from the Union Pacific Railway Company, which had charge of the train. It was also alleged that whatever injuries were received were by reason of the contributory negligence of plaintiff.

To this answer, plaintiff filed her reply admitting that the village of Elkhorn was not situated on the defendant's line of railroad, but was several miles eastward from its eastern terminus on the line of the Union Pacific railroad. The allegations of the answer concerning the use and occupation of defendant's road by the Union Pacific Railway Company were denied, and it was alleged that the Union Pacific Railway Company had no power nor authority to become the stockholder of defendant, and that it did not operate the line of road as alleged in the answer, and that the agents and servants referred to in the petition and answer were the agents and servants of defendant.

It was denied that plaintiff purchased her ticket from or made any contract for her transportation with the Union Pacific Railway Company, but that she applied at the usual and well-known office of defendant, situated on its line of road and on its right-of-way, and that in response to such application to the persons in charge, she was sold a ticket for continuous passage from Wahoo to Elkhorn; that she boarded defendant's train at Wahoo and was carried through without change of cars to Elkhorn, where she received the injury through the negligence of defendant, as alleged in her petition. All other allegations of the answer were denied.

A jury was impaneled, when plaintiff called and examined certain witnesses tending to prove the purchase of a

ticket at Wahoo, in Saunders county and on the line of the defendant's road, to Elkhorn, in Douglas county, on the line of the Union Pacific railroad; that she went aboard the train at Wahoo and was transported without change of cars from there to Elkhorn, where the alleged injury occurred.

Among other witnesses called was the station agent at Wahoo, who testified that he was the agent for the Union Pacific Railway Company, hired by the superintendent of the said company, who was also the superintendent of the Omaha & Republican Valley Railroad Company; that the Omaha & Republican Valley railroad, upon the right-of-way of which the depot was located in which he was employed, was operated as a branch of the Union Pacific railroad; that the ticket offered in evidence and attached to the record was the character of ticket sold at the time plaintiff's ticket was purchased, and was known as a local book ticket, which was used as a substitute for card tickets commonly used on railway lines for local travel; that the reason why the ticket of the form given was used, was that card tickets were used only between points where there was considerable travel; that between points where there was but little demand for tickets, the local book ticket was used in its stead. This ticket was in the following form:

| UNION PACIFIC RAILWAY. | | LOCAL. |
| --- | --- | --- |
| ONE FIRST CLASS PASSAGE. WAHOO To ............ *Elkhorn* Via ............ WHEN OFFICIALLY STAMPED. IF THIS TICKET IS SOLD AT A REDUCED RATE IT IS VOID AFTER ............ 188 If no date is written hereon, Conductors will honor this as an unlimited Ticket. Baggage liability limited to wearing apparel, not exceeding $100 in value. **1300**  (Form L. 100)   *C. S. Stebbins,* General Ticket Agent. | UNION PACIFIC RY.  WAHOO  *Elkhorn* To ............ *Via* ............ | This Check is not good for passage, must be filled up to correspond with the Ticket, and will be returned to Auditor Pass'ger Ac'ts by first Conductor to whom it is presented.  **1·3 0 0** |

It was shown that all the freight and passenger business of the defendant was reported to the proper auditing officers of the Union Pacific Railway Company, who were also the auditing officers of the defendant; that the eastern terminus of the defendant's road was at Valley, on the Union Pacific railroad in Douglas county, and that the destination (Elkhorn) of plaintiff was on that road a short distance east from Valley. It was also shown that no change of cars was made by passengers going from Wahoo to Elkhorn, but that the car in which the passengers were seated ran over the entire line between the two stations. Plaintiff then sought to prove that she had received the injury complained of at the station at Elkhorn by the negligence of the persons in charge of the train, she being violently thrown from the car upon which she was riding, and from which she was endeavoring to alight, and by which she was injured, and offered to prove all the allegations of her petition in that behalf. To this offer, defendant objected as incompetent, irrelevant, and immaterial, which objection was sustained, and to which ruling plaintiff excepted. The court then directed the jury to return a verdict in favor of defendant, to which plaintiff also excepted.

The verdict having been returned in accordance with the direction of the court, plaintiff presented her motion for a new trial, in which it was alleged that the court erred:

"First—In directing the jury to find for the defendant.

"Second—In refusing to permit plaintiff to prove her case as made by her petition.

"Third—Error of law occurring at the trial.

"Fourth—The verdict is not sustained by sufficient evidence.

"Fifth—The verdict is contrary to law.

"Sixth—The court erred in giving the instructions numbers 'one' and 'two' to the jury."

This motion being overruled, and judgment having been entered in favor of the defendant on the verdict of the jury,

the cause is brought to this court by plaintiff, by proceedings in error.

. Two questions are presented for decision :

First—Would the fact that the Union Pacific Railway Company was operating the defendant's road at the time of the accident, if such were the fact, exempt defendant from liability for damages resulting from injuries of the kind alleged to have been sustained by plaintiff ?

Second—If not, would the fact that the accident occurred on the line of the Union Pacific railroad and off the line of defendant's road, prevent a recovery against defendant, and render the Union Pacific Railroad Company alone liable, the contract for transportation having been made with defendant, the ticket delivered thereunder being a single local ticket (without coupons) for continuous passage, the transportation being continuous upon the same train or car furnished by defendant at its station on the line of its own road ?

We are unable to find any proof in the record as to the capacity in which the Union Pacific Railway Company had possession of the defendant's road—if it had such possession— whether of lessee, owner, or by a traffic arrangement. But for the purpose of this case we do not think it very material as to this, for we are of the opinion that no arrangement or contract could be made which would have the effect of releasing defendant from liability in a case of this kind. It is alleged in the petition and admitted in the answer that defendant is a corporation organized under and by virtue of the laws of this state; and it is alleged in the answer, and perhaps not denied in the reply, that the Union Pacific Railway Company is a corporation organized under and by virtue of the laws of the United States, and hence is not a domestic corporation in the sense of being organized under the laws of this state.

Section 3 of chapter 72 of the Compiled Statutes, in treating of railroad corporations whose lines of road are in this state, is as follows:

"Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the persons of passengers while being transported over its road, except in case where the injury done arises from the criminal negligence of the persons injured, or when the injury complained of shall be by the violation of some express rule or regulation of said road actually brought to his or her notice."

Section 72, *et seq.*, of chapter 16 of the Compiled Statutes, provides a method for the incorporation of railroad companies in this state and confers upon such corporations the right of eminent domain and other privileges therein mentioned, among which are the right to lay out, locate, construct, furnish, maintain, operate, and enjoy, a railroad, and for that purpose the issuance of shares of capital stock of $100.00 each, which shares shall be regarded as personal property, and shall be subject to sale or transfer in the usual way, etc. The sale and transfer of the shares of stock would not necessarily confer upon another railroad corporation, the owner or holder of such shares, the right to take possession of the road, relieve it from its proper liability to its patrons, and compel them to look to the owner of the capital stock for their compensation for injuries received on its line. It is the general intent and purpose of the constitution and laws of this state that railroad companies, except such as have been chartered by congress, shall, as a condition precedent to the enjoyment of the proper rights and franchises of railroad companies, become organized and incorporated under the laws of this state, and, therefore, subject to the jurisdiction of its courts. These provisions might be successfully evaded or rendered nugatory, were corporations (other than domestic corporations) permitted to buy up the capital stock assume exclusive control and management of the franchises conferred, and at the same time compel persons having legal demands to look to the non-resident corporation for their liquidation. It evidently never was the purpose of the legislature to permit corporations to be organized

under the laws of the state, construct their lines of railroad, and then turn them over to foreign corporations for operation and management, and thus avoid all legal liability growing out of a failure to discharge public duties.

As is substantially said in many of the cases hereinafter cited, the right to organize corporations which shall have the right to exercise the sovereign powers conferred upon railroad companies, is granted only by the laws of our state. A railroad corporation organizing under them does so with the liabilities of a domestic corporation attached. If a railroad company to which the legislature has granted these franchises permits others to use them, the original company must be responsible to the public for the negligence of such persons. It is only by authority derived from the laws of this state that a railroad company can transfer to another the right to use its track by lease or otherwise, and we know of no statute by which the original company can divest itself of responsibility by transferring its corporate powers to other parties, or by leasing its road to them.

It is practically a universal rule in this country that the original incorporated company cannot, in the absence of a special statute authorizing an exemption, divest itself of responsibility for the torts of persons operating its road, by transferring its corporate powers or leasing the road to them. It cannot by its own act absolve itself from its proper obligations without the consent of the legislature. It is liable for injuries to its passengers caused by the negligence of another company which it allows to use its road. (Pierce on Railroads, 283, and cases there cited; see *Balsley v. St. L. R. R. Co.*, 119 Ill. 68; *Singleton v. R. R. Co.*, 70 Ga. 464; *R. R. v. Brown*, 17 Wall. 445; *M. & A. R. R. v. Mayes*, 49 Ga. 355; *Nelson v. Vt. & C. R. R. Co.*, 26 Vt. 717; *O. & M. R. R. v. Dunbar*, 20 Ill. 623.)

It follows that while the ticket might be issued in the name of the operating company, yet a liability would exist as against the corporation constructing and owning the

road, even though the operating company might also be liable.

In *Nelson v. R. R. Co.*, *supra*, Judge Redfield, in writing the opinion of the court, says: "The lessors must, at all events, be held responsible for just what they expected the lessees to do, and possibly for all which they do do, as their general agents. For the public can only look to that corporation to whom they have delegated this portion of public service. Certainly they are not bound to look beyond them, although they may doubtless do so."

Second, it was shown by the evidence that plaintiff's husband went to the station on defendant's road and called for tickets to Elkhorn. Tickets similar to the one hereinbefore copied were handed to him by the agent. While the words "Union Pacific Railway" are printed upon the ticket, and also upon the stub attached thereto, yet there is nothing contained in the ticket which necessarily shows it to be the contract of that company, nor that the contract for carriage was made with it. A ticket is said to be a receipt taken, or voucher showing payment for the passage, rather than a contract, and by its purchase the contract between the passenger and the carrier is said to be consummated. The contract is implied by law, except so far as it is expressed on the face of the ticket. (2 Wood's Railway Law, p. 1394, and cases cited.) The ticket therefore would not render the contract between plaintiff and defendant different from what it would have been had the words referred to not appeared on it. The contract having been to convey plaintiff to Elkhorn from Wahoo, as shown by the testimony above referred to, and a single ticket having been given, it would seem that plaintiff had the right to look to defendant for a fulfillment of such contract. It is perhaps true that where coupon tickets are sold over long lines of connecting roads by the first company acting alone as the agents of those over whose roads the passenger is to travel, the company selling the ticket is liable only for a safe passage over

its line.  But such connections do not exist here.  For the purpose of the liability of the company selling the ticket, the whole line over which plaintiff was to pass was that of the defendant.

In *Great Western Railway Company v. Blake*, 7 H. & N. (Exch.) 987, Chief Justice Cockburn, in delivering the opinion of the court, says : " If a railroad company chooses to contract to carry passengers not only over their own line, but also over the line of another company, either in whole or in part, the company so contracting incurs all the liability which would attach to them if they contracted solely to carry over their own line."

In that case it was held that the defendant company was liable to the plaintiff for damages resulting from a personal injury caused by an accident on the line of the South Wales Railway Company, and over which the plaintiff was being transported in the same carriage which he entered at Paddington Station, on the Great Western Railway Company's line, and for which he had paid one fare for his conveyance to Milford, on the line of the South Wales Railway Company.  The same was held in *Birkett v. Railway Company*, 4 Id. 729.  See also *Buxton v. Railway Company*, 3 Q. B. 549; *Thomas v. Railway Company*, 5 Id. 266 ; *Stetler v. C. & N. W. Railway Company*, 49 Wisconsin, 609; *W. St. L. & P. Ry. v. Peyton*, 106 Ills. 534; *Bissell v. Railroad*, 22 N. Y. 258; *Peters v. Rylands*, 20 Pa. St. 497.

Our attention is called to *Hood v. Railroad Company*, 22 Conn. 1, and it is insisted by defendant that the reasoning of Judge Ellsworth in the opinion, conclusively establishes the rule adopted by the learned judge of the district court in his direction to the jury.  In that case the plaintiff purchased a ticket from the defendant railway company to Collinsville.  The defendant had no road to Collinsville, and passengers were conveyed from a point on its road to Collinsville by stage.  A single ticket was sold,

which was exchanged for a ticket given to plaintiff by the conductor on defendant's train, which is as follows:

> NEW HAVEN AND NORTHAMPTON COMPANY.
>
> CONDUCTOR'S TICKET.
>
> *New Haven to Collinsville, by stage from Farmington.*
> O. D. GOODRICH,
> *Conductor.*

Judge Ellsworth in his opinion, referring to the railroad and stage companies, says: "One company receives nothing for the services, or expenditures, or risks, of the other; nor is there a participation in profits; nor a partnership; nor joint obligation; nor joint control. Each attends exclusively to his own appropriate business: the railroad company to the railroad, and the stage company to the stages."

It seems to us that the case at bar must be disposed of on principles differing materially from those applied to that case. While it is true that a single ticket was sold, yet it was known that only a portion of the passage could be made by rail. And doubtless, as stated in the opinion of the learned judge, each company attended exclusively to its own appropriate business: "the railroad company to the railroad, and the stage company to the stages." The railroad made no claim or pretension to carry passengers to Collinsville in its cars, and doubtless the same rule would have been applied had the stage company, instead of running coaches, furnished horses upon which the passenger might ride. But in this case the facts are entirely different. Plaintiff purchased her ticket to Elkhorn. Defendant placed her in a car for passage, which was to and did transport her to her destination without change. When she purchased her ticket and boarded the car at Wahoo, the undertaking was clearly for her transportation therein to the point of destination. The fact that the car would

pass over the track of another company *en route* could make no difference. The same may be said of the citations from Rorer on Railroads, 997, and Wood's Railway Law, 1417, in which it is said, as we have before indicated, where coupon tickets are sold, the company selling the ticket is the agent of the connecting lines over which the coupons attached to the ticket will furnish the passenger transportation.

We hold that the agent by whom the ticket was sold to plaintiff must be treated as the agent of defendant, and that by the sale of the ticket in response to a request for a ticket to Elkhorn, and a conveyance of plaintiff over the road in defendant's train and car without change, procured by the single local ticket, the defendant would be liable for any injury to plaintiff while carrying her over the line designated in her ticket, caused by the negligence of those in charge of the train and car upon which she traveled.

The judgment of the district court is reversed, and the cause is remanded for further proceedings according to law.

REVERSED AND REMANDED.

THE other Judges concur.